

## COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00283-CR

THOMAS BLACK                                                          APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

------------

FROM THE 211TH DISTRICT COURT OF DENTON COUNTY

------------

## OPINION

----------

A jury convicted Appellant Thomas Black of the possession of at least four grams of methamphetamine but less than 200 grams, with the intent to deliver. The trial court sentenced him to forty years' confinement. Appellant brings five issues on appeal, challenging the sufficiency of the evidence linking him to the contraband and contending that the trial court should have suppressed evidence that Appellant argues was illegally seized and that the trial court abused its discretion by admitting the hearsay contents of the cell phone found on Appellant's person. Because the evidence is sufficient to show a nexus between

Appellant and the contraband and because the trial court did not commit reversible error by admitting the evidence that Appellant sought to suppress, including the hearsay contents of the cell phone, we affirm the trial court's judgment.

## I. Background Facts

After receiving a tip from a bounty hunter, five Denton police officers went to the apartment of siblings Laci and John Feagley to execute a felony warrant for the arrest of Nick McBee, who was at the apartment. A number of other people were also at the apartment, including Appellant, who had gone to the apartment with John Owens. The officers found Appellant and John Feagley in the parking lot working on the stereo in Laci's car. Officer James Bolin detained Appellant and John Feagley while the other officers went to the apartment.

Two of the officers went to the apartment door and knocked. Officer David Acrey heard the door lock and then heard "a lot of commotion inside." Acrey knocked again and identified himself as a police officer. A female in the apartment stated that she was not dressed, "and it would be a minute." Acrey heard the sound of plastic shades on a sliding door, "like somebody might have been trying to go out the balcony door." Laci opened the door soon after that, and the officers entered. One of the officers arrested McBee on the apartment's balcony.

In the apartment, officers saw in plain view marijuana, a bong, and scales. Officer Craig Fitzgerald asked Laci for permission to search the apartment, and

she consented. The officers found a laptop bag and a glasses case, which Owens and Laci identified as Appellant's. In the laptop bag, officers found Appellant's identification, a small baggie of marijuana, and a piece of paper with numbers written on it. They found several baggies containing methamphetamine in the glasses case. Officers also found a baggie containing methamphetamine next to a chair in the living room.

The baggie found by the chair contained 1.28 grams of methamphetamine; the baggies found in the glasses case contained a combined total of sixteen grams of methamphetamine.

The officers arrested Appellant and searched him. In their search of his person, they found a cell phone. After obtaining a search warrant, the police searched the contents of the cell phone. The phone showed outgoing text messages to one number that said,

- "no, cause he has to come from denton, and Id only be makin 3 an oz. plus you only have to take half as much"; and

- "Its gonna take him 45 to an hour to drive to your house from Denton";

and another outgoing text message to "Crystal" stating, "John just got here, let me know if you still need that pretty quick, before he leaves Denton."

The phone had incoming text messages that said, "I got a trick right now so yeah but dnt no how much"; "Can u hook me up for 140? do u hav a ride?"; "Can you charge me fifteen an oz"; and "I have your money and want 2 i have 55." The phone also had stored photographs of what looked like methamphetamine.

At trial, Appellant objected to the admission of evidence from the laptop bag on the ground that he had not consented to its search.  He objected on Fourth Amendment and hearsay grounds to the admission of the data taken from the cell phone; he also complained about the denial of cross-examination. Appellant additionally moved to suppress the evidence of the drugs and the cell phone and moved for a directed verdict.  The trial court denied the motions.

## II.  Suppression Issues

In his first two issues, Appellant argues that the trial court reversibly erred by denying his motion to suppress the contraband and the contents of the cell phone.  He did not file a written motion to suppress but, rather, argued an oral motion to suppress after the State rested its case in chief.  That is, he waited until the complained-of evidence had been admitted before lodging his motion to suppress that evidence, although he did object to a greater or lesser degree when the evidence was offered.  A visiting judge heard the trial and did not enter findings of fact or conclusions of law when she denied Appellant's motion to suppress.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.[1]  We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that

---

[1]*Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor.[2]

When the record is silent on the reasons for the trial court's ruling, or when, as here, there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings.[3] We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling.[4]

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling.[5]

Appellant argued in his oral motion to suppress that the Fourth Amendment to the Constitution of the United States mandated suppression of the contraband found inside the house because the only evidence of a nexus

---

[2]*Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

[3]*State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007).

[4]*State v. Kelly*, 204 S.W.3d 808, 819 (Tex. Crim. App. 2006).

[5]*State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

between the methamphetamine and him was uncorroborated accomplice testimony. He argued that the Fourth Amendment also mandated suppression of the contents of the cell phone found on his person because the cell phone was not in his name and did not identify the person texting.

Appellant argued that the underlying sources of the information provided the police in support of his arrest—Owens and Laci, the two accomplices in the apartment who identified him as the owner of the glasses case containing multiple baggies of methamphetamine—were unreliable because they were accomplices. That is, the evidence of a nexus between Appellant and the methamphetamine found inside the apartment was provided by Laci, who lived in the apartment with her brother, and Owens. Appellant argued that Laci and Owens were equally unreliable. He based this argument on the facts that Owens testified that everyone in the apartment was smoking methamphetamine and ice, and the police testified that they had observed a bong, scales, marijuana, and methamphetamine in plain view inside the apartment, but Laci denied any knowledge of the presence of any drugs or drug paraphernalia inside her apartment.

Appellant also contended in his oral motion to suppress that the contents of the cell phone were necessary to corroborate the accomplice testimony. The police officers stated that they had seized the cell phone incident to Appellant's arrest. The officers first seized and handcuffed Appellant either for officer safety or because they believed that he was McBee, for whom the officers had an arrest

6

warrant. When the police realized that Appellant was not McBee, they removed the handcuffs. The search of Appellant for officer safety does not appear to have revealed the cell phone. After the officers found the methamphetamine and were told by Owens and Laci that the methamphetamine belonged to Appellant, the officers again handcuffed Appellant and searched him. It appears that this was the search that yielded the cell phone.

The officers viewed the picture of methamphetamine that was used as the screensaver upon Appellant's arrest, but, instead of continuing to scroll through the contents of the cell phone, the officers showed a conscientious knowledge and regard for the law by properly securing a search warrant. Only after securing the search warrant did any police officer search the contents of the cell phone.

Although the initial seizure of the cell phone was not pursuant to a warrant, Appellant states in his brief that seizure of the cell phone was not the crucial element of his complaint. Rather, he argues that the search of the cell phone required a warrant. But the record provides that the officers had a warrant before they searched the cell phone. We hold that merely viewing the screensaver did not constitute a search. No search occurred until after the officers had secured a search warrant for the cell phone. We overrule Appellant's first issue.

In his second issue, Appellant challenges the search of the laptop bag and the glasses case, contending that he did not give his consent to search them and that the searches therefore violated the Fourth Amendment of the United States Constitution and article I, section 9 of the Texas Constitution. He objected to the

admission of the contents of the laptop bag only on the grounds of chain of custody and the scope of Laci's consent to search the apartment. Appellant argued that she had no authority or standing to give police consent to search the bag. Yet, before the State offered into evidence the items found inside the bag, Appellant himself proved up some of the contents of the bag—his "ID" and "a little baggie of marijuana"—in questioning Officer Acrey. The jury therefore already knew about those contents before Appellant untimely objected to the admission of the physical exhibits.

A trial court's erroneous admission of evidence will not require reversal when other such evidence was received without objection, either before or after the complained-of ruling.[6] This rule applies whether the other evidence was introduced by the defendant or the State.[7] Consequently, because the jury already knew about the incriminating evidence connecting Appellant to both the laptop bag and its contents, any error in admitting them is not reversible.

Additionally, after the State offered the piece of notebook paper with notations into evidence over Appellant's chain of custody and scope of consent objections, he raised no objection to Officer Fitzgerald's describing State's Exhibit No. 4 as a "piece of notebook paper with what appears to be amounts, quantities written on it." Nor did Appellant object to Officer Fitzgerald's further explanation interpreting the notes written on the notebook paper:

---

[6]*Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998).

[7]*Id.*

8

"Methamphetamines, narcotic trafficking, nine grams, 1.9 grams, and the amounts of methamphetamine." Appellant also did not object when Officer Fitzgerald agreed that in his experience in investigating narcotics cases, it was common to come across "what are generally termed as drug notes."

Generally, in order to preserve his complaint for appellate review, Appellant was required to object each time the complained-of evidence was discussed or to request and be granted a running objection.[8] When, however, an objection is presented as a motion to suppress heard outside the presence of the jury, that single objection preserves the issue for appellate review.[9]

The question, then, is whether Appellant's objection to the piece of notebook paper was a simple objection or an objection presented as a motion to suppress and heard outside the presence of the jury. After examining the record, we hold that Appellant merely lodged an objection to the admission of the sheet of notebook paper into evidence. Nothing in his objection would have suggested to the trial court that he was lodging a motion to suppress. Nor did any suppression hearing occur outside the presence of the jury. Because Appellant's objection to the evidence did not rise to the level of a motion to suppress, we hold that Appellant was required to request a running objection or to object to

---

[8]*See Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003); *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003) (citing *Ethington v. State*, 819 S.W.2d 854, 858–59 (Tex. Crim. App. 1991)); *Fuentes v. State*, 991 S.W.2d 267, 273 (Tex. Crim. App.), *cert. denied*, 528 U.S. 1026 (1999).

[9]*Moraguez v. State,* 701 S.W.2d 902, 904 (Tex. Crim. App. 1986).

9

each reference to the sheet of notebook paper or its contents. Appellant did lodge a motion to suppress after the State had rested, but by that time all the evidence of which he had complained was before the jury. His motion to suppress lodged after the State had rested was not timely. Consequently, Appellant has failed to preserve his complaint regarding the admission of the sheet of notebook paper from the laptop bag. We overrule that portion of Appellant's second issue challenging the admission of the laptop bag and its contents.

The glasses case was admitted as State's Exhibit 14. Not only did Appellant lodge no objection, he affirmatively stated that he had no objection to its admission. When the State offered the methamphetamine that was contained in the glasses case, Appellant again stated that he had no objection. Additionally, Appellant had asked Officer Acrey the following questions,

> Q. And there was nothing in that little case that identified my client, was there?
>
> A. No.
>
> Q. And it was a—was it a sunglass case or something like that?
>
> A. Yea, or glasses or something.
>
> Q. Or glasses or something, in plain view. Now, to be sure, there was a decent amount of—of—of methamphetamines in there. Right?
>
> A. Yes.

This exchange occurred before the State ever sought to offer evidence of the contents of the glasses case.

10

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.[10]  Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule.[11]  A reviewing court should not address the merits of an issue that has not been preserved for appeal.[12]

For the reasons stated above, Appellant failed to preserve his complaint regarding the admission of the glasses case and its contents.  We overrule the remainder of his second issue.

## III.  Admission of Text Messages

In his third issue, Appellant contends that the trial court abused its discretion by "admitting, over hearsay objection, text messages when the State used pictures of texts from a cell phone found on Appellant's person and the pictures were used to apply the content of the texts to link him to possession of controlled substances."

---

[10]Tex. R. App. P. 33.1(a)(1); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009).

[11]Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).

[12]*Wilson v. State*, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010) (op. on reh'g).

At trial, in addition to his Fourth Amendment complaint, Appellant objected that the contents of the cell phone were hearsay because there was no way to tell who made the statements found on the cell phone and because they were offered for the truth of the matter asserted. He also argued that he had no way to cross-examine an unknown person:

> [T]he issue is it becomes hearsay because, number one, it's unreliable. We don't know, number one, who is sending those text messages. It doesn't identify the person talking. We can't just assume that it's the Defendant, and it's definitely offered to prove the truth of the matter asserted, so it's a hearsay statement I don't have any way of cross-examining. Number one, I don't know who is receiving it, and I don't know who sent it.
>
> . . . .
>
> How could it not be offered for the proof of the matter asserted? We don't know who's sending those. We can't just assume that he is just because he was the person that was found with it in his possession at the time of the arrest.

Appellant does not raise the violation of his right to cross-examination on appeal. Further, we note that Appellant offers a conclusory, unsupported subsidiary complaint on appeal that none of the exhibits was produced by business records affidavit, but, rather, through the State's crime scene technician who took pictures of the cell phone screen. We overrule this complaint as inadequately briefed.[13]

---

[13]*See* Tex. R. App. P. 38.1(i); *Russeau v. State*, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005), *cert. denied*, 548 U.S. 926 (2006); *Tong v. State*, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 1053 (2001).

The evidence shows that Appellant was released from prison at least a week before the dates on the text messages. The cell phone was in his possession when it was confiscated. Appellant does not challenge the fact that the text messages were sent, the reliability of the notation of the date on the text messages, or the nexus between the messages and himself other than to argue that there was no way to determine who sent or received the messages.

We view Appellant's complaint on appeal as one of hearsay and authentication. Appellant's authentication complaint seems to be two-fold: no showing of who sent the messages and no showing of who received the messages.

The law Appellant cites for this issue is not helpful. He distinguishes *Lozano v. State*, an unpublished case holding that a defendant's own out-of-court statement against interest found in a text message is not hearsay,[14] and a similar case[15] by pointing out that there is no evidence in the case before us that he authored any of the texts. He also references a case that he incorrectly states upheld text message evidence on the basis of optional completeness but which in fact upheld the admission of a text message over a rule 403 objection.[16]

---

[14]No. 02-06-00379-CR, 2007 WL 4216349, at *8 (Tex. App.—Fort Worth Nov. 29, 2007, no pet.) (mem. op., not designated for publication).

[15]*Everett v. State*, No. 14-01-00588-CR, 2002 WL 534124, at *2 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (not designated for publication).

[16]*See Roberson v. State*, No. 02-08-00152-CR, 2010 WL 3075612, at *4 (Tex. App.—Fort Worth Aug. 5, 2010, pet. ref'd) (mem. op., not designated for publication).

This court is sympathetic with Appellant's position in trying to find law directly on point, given the speed with which technology has changed. To guide parties in raising and preserving such issues, courts are going to have to determine at some point whether a cell phone is akin to a computer, a file cabinet, a personal notebook or diary, or something else, and the rules of evidence should be modernized. But Appellant does not challenge the technology. Nor does he challenge the rule 901 predicate required for the authentication or identification of most electronic devices.[17]

As to Appellant's hearsay complaint, to the extent that the State offered any of the photographs of the images from the cell phone for some purpose other than the truth of the matter asserted, then such evidence was not hearsay. Further, the screensaver picture of what appeared to be methamphetamine was not a statement; it was therefore not hearsay.[18]

But as to the remaining images from the cell phone, what the police viewed were clearly messages. A police officer could testify that she saw a message on the cell phone screen. The ticklish question is the degree to which the officer could properly describe the message. The officer could say that the message was short or long but could not lawfully describe its nature absent a hearsay exception. For example, the officer could testify that the message was three

---

[17]*See* Tex. R. Evid. 901.

[18]*See* Tex R. Evid. 801(a); *Wood v. State*, 299 S.W.3d 200, 214 (Tex. App.—Austin 2009, pet. ref'd).

14

lines long but could not testify to the contents of the three lines. The officer could testify that it was a page of words and numbers, but not that the message was a receipt for furniture.

The text messages here purport to be expressions of a desire to engage in a drug transaction. This is a drug case. We therefore disagree with the State that the text messages were not offered for the truth of the matter asserted. Further, because a person (although not identified in court) generated each text message—that is, the contents of the messages were produced by human thought and action—the messages are not computer-generated data and therefore not classified as nonhearsay.[19] We consequently conclude that they are hearsay.

Further, no hearsay exception justifies the admission of the text messages. Because there was no showing that Appellant wrote or ratified any of the messages, and indeed, no showing that the messages were written while the cell phone was in Appellant's possession, the messages did not qualify as statements that he made against his penal interest and therefore did not fall under that hearsay exception.[20]

---

[19]*See United States v. Washington*, 498 F.3d 225, 231 (4th Cir. 2007), *cert. denied*, 129 S. Ct. 2856 (2009); *Hamilton v. State*, 300 S.W.3d 14, 21–22 (Tex. App.—San Antonio 2009, pet. ref'd), *cert. denied*, 131 S. Ct. 2905 (2011); *Miller v. State*, 208 S.W.3d 554, 563 (Tex. App.—Austin 2006, pet. ref'd); *see also* Tex. R. Evid. 801(b).

[20]*See* Tex. R. Evid. 803(24).

Consequently, we hold that the contents of the messages were inadmissible hearsay and that the fact that "drug messages" were on the cell phone was likewise inadmissible hearsay. The trial court therefore abused its discretion by admitting this evidence.

We have already held that the police lawfully searched the cell phone, and Appellant did not raise his Sixth Amendment claim that his right to cross-examination had been violated on appeal. The erroneous admission of the cell phone's contents and the characterization thereof as "drug messages"—inadmissible hearsay—is therefore nonconstitutional error governed by rule 44.2(b), which provides that an error that does not affect substantial rights must be disregarded.[21] A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict.[22] Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect."[23]

In making these determinations, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the

---

[21]*See* Tex. R. App. P. 44.2(b); *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001).

[22]*King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)).

[23]*Solomon*, 49 S.W.3d at 365; *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

character of the alleged error and how it might be considered in connection with other evidence in the case.[24]  We may also consider the jury instructions, the State's theory and any defensive theories, whether the State emphasized the error, closing arguments, and even voir dire, if applicable.[25]

Ignoring the inadmissible cell phone messages and the characterization of them as "drug messages," the fact that Appellant possessed the cell phone was admissible.  The fact that drug dealers use cell phones was also admissible.  Further, the police found Appellant's identification in the computer bag.  The baggies of methamphetamine in the eyeglasses case themselves provided evidence that the drugs were packaged to sell.  Notations on the sheet of paper the police found in the computer bag also indicate drug sales.  We hold that the "drug notes" indicating methamphetamine sales and Appellant's identification, both found in the computer bag, sufficiently corroborate the accomplice testimony.  The screensaver picture of methamphetamine would not alone be sufficient corroboration, but it does serve as additional corroboration.

We also point out that the corroboration goes only to Appellant's nexus to the methamphetamine.  The methamphetamine itself was properly admitted, and Appellant's trial counsel specifically stated that he had no objection to its admission.

---

[24]*Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

[25]*Id.* at 355–56.

Consequently, we hold that in the context of the entire case against Appellant, the erroneous admission of the hearsay text messages from the cell phone and their characterization as "drug messages" did not have a substantial or injurious effect on the jury's verdict and did not affect his substantial rights.[26] Thus, we disregard the error.[27] We overrule Appellant's third issue as presented at trial and in Appellant's brief.

## IV. Sufficiency of the Evidence Affirmatively Linking Appellant to the Contraband

Appellant argues in his fourth and fifth issues that the trial court erred by denying his motion for a directed verdict of acquittal because the evidence is insufficient to show an affirmative link between Appellant and the methamphetamine. He bases his argument in large part on the facts that the contraband was located in the Feagleys' locked apartment while he was outside in the parking lot and the cell phone data referencing some kind of transaction could not be directly tied to him.

To prove unlawful possession of a controlled substance, the State must show that Appellant (1) exercised control, management, or care over the substance and (2) knew that it was contraband.[28] The evidence, direct or circumstantial, must establish, to the requisite level of confidence, that

[26] *See King*, 953 S.W.2d at 271.

[27] *See* Tex. R. App. P. 44.2(b).

[28] *See Poindexter v. State,* 153 S.W.3d 402, 405 (Tex. Crim. App. 2005); *Joseph v. State*, 897 S.W.2d 374, 376 (Tex. Crim. App. 1995).

18

Appellant's connection with the methamphetamine was more than just fortuitous.[29]

There is no evidence that the baggie of methamphetamine sitting beside the chair belonged to Appellant, but Appellant does not challenge his nexus to that methamphetamine.

Sufficient evidence does, however, support the conclusion that the sixteen grams of methamphetamine found in the glasses case belonged to Appellant. The record contains evidence to support a conclusion that Appellant had been inside the apartment: Witnesses testified that he had been there, and a computer bag containing his identification was found inside the apartment but in a different location that the baggie of methamphetamine by the chair. Laci and Owens told the police and testified that the methamphetamine in the glasses case belonged to Appellant. The record shows that Owens provided Appellant the glasses case knowing that he would use it to house his methamphetamine. Laci claimed that she knew that the methamphetamine was Appellant's but that she did not notice the scales or bong in her apartment or see the marijuana in her bathroom. We hold that the evidence sufficiently links Appellant to the sixteen grams of methamphetamine in the glasses case. We overrule Appellant's fourth and fifth issues.

**V. Conclusion**

---

[29]*See Poindexter*, 153 S.W.3d at 405–06.

Having overruled Appellant's five issues on appeal, we affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and MCCOY, JJ.

PUBLISH

DELIVERED:  January 12, 2012