# NO. 12-17-00303-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *LETROY DEWAYNE MERRITT,* <br> *APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* <br> *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Letroy Dewayne Merritt appeals his conviction for aggravated robbery. In one issue,[1] Appellant argues that the trial court abused its discretion in admitting into evidence certain text messages purportedly authored by Appellant, which were recovered from a cellular telephone belonging to one of the participants in the robbery. We affirm.

### BACKGROUND

On February 5, 2017, four individuals participated in an armed robbery of a WalMart store located at 6801 South Broadway in Tyler, Texas. Just before midnight, WalMart employee Cosandra Williams was removing cash from some of the registers to secure that money in an in-store vault. Appellant, one of the overnight assistant managers was with her as she did so. When she reached the room where the vault was located, Appellant kept walking and two individuals, one of whom was armed, forced Williams at gunpoint into the vault room. Thereafter, the individuals took multiple bags of the money she was transporting to the vault and fled the scene. Appellant later was arrested and indicted for aggravated robbery for his alleged participation in the crime. Appellant pleaded "not guilty," and the matter proceeded to a jury trial.

---

[1] In his brief, Appellant originally raised a second issue concerning the constitutionality of certain court costs. After the State filed its response, Appellant filed a reply brief, in which he abandoned his second issue.

At trial, over Appellant's hearsay objection, the State admitted an exhibit containing several text messages recovered from a phone owned by one of the participants in the robbery. According to Tyler Police Department Detective Jason Compton, four text messages in the exhibit were sent from a phone belonging to Appellant and identified on the recipient's phone as originating from "Amari Daddy." The text messages at issue read as follows:

> Once he point the gun he need to say don't say [sh*t] or you're dying tonight.
>
> . . . .
>
> 6801 S. Broadway Ave, Tyler, TX 75703
>
> . . . .
>
> Yessss money stay in your car lol
>
> . . . .
>
> Answer tha [f*ckin] phone

Appellant later testified, acknowledged that he sent the text messages at issue, but offered an innocent explanation of their respective contents. Thereafter, the State called two accomplice witnesses, who testified that Appellant was involved in the robbery. Ultimately, the jury found Appellant "guilty" as charged and assessed his punishment at imprisonment for twenty-five years. The trial court sentenced Appellant accordingly, and this appeal followed.

## AUTHENTICATION AND HEARSAY

In his sole issue, Appellant argues that the trial court abused its discretion by admitting into evidence text messages purportedly sent by him because the content of the messages was unauthenticated hearsay.[2]

### Standard of Review and Governing Law

A trial court's ruling on the admissibility of evidence is reviewed under an abuse of discretion standard. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003); *Manuel v.*

---

[2] Appellant's argument on appeal focusses on the hearsay aspect of the statement. But Appellant's identity as the author of the text messages at issue also is relevant to whether the messages were not hearsay as admissions by a party opponent. *See* TEX. R. EVID. 801(e)(2). Thus, we consider the authenticity of the text messages at issue in conjunction to whether they were inadmissible hearsay. *See* TEX. R. APP. P. 38.1(f).

*State*, 357 S.W.3d 66, 74 (Tex. App.–Tyler 2011, pet. ref'd). If the ruling is within the zone of reasonable disagreement, an appellate court will not disturb it. *Manuel*, 357 S.W.3d at 74.

The issue of authentication arises when, as in this case, "the relevancy of any evidence depends upon its identity, source, or connection with a particular person place, thing, or event." *Shea v. State*, 167 S.W.3d 98, 104 (Tex. App.–Waco 2005, pet. ref'd). "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." TEX. R. EVID. 901(a). Rule 901 does not erect a particularly high hurdle, and that hurdle may be cleared by circumstantial evidence. *Manuel*, 357 S.W.3d at 74. The proponent of the evidence does not need "to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *Id.* The proponent only must produce sufficient evidence that a reasonable fact finder could properly find genuineness. *Id.*

Authentication can be accomplished in various ways. *Id.* For example, evidence may be authenticated by testimony from a witness with knowledge that a matter is what it is claimed to be. *See* TEX. R. EVID. 901(b)(1). Evidence also may be authenticated by "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." TEX. R. EVID. 901(b)(4). Generally, these two rules are the most common authentication techniques used for e-mail, websites, text messages, and other electronic evidence. *Manuel*, 357 S.W.3d at 75.

Like an email, a text message properly may be authenticated if its appearance, contents, substance, or other distinctive characteristics, taken in conjunction with circumstances, support a finding that the document is what its proponent claims. *Id.* Characteristics to consider in determining whether text message evidence properly has been authenticated include (1) consistency with the phone number from which the text message originated in another text message sent by the alleged author, (2) the author's awareness, shown through the text message, of the details of the alleged author's conduct, (3) the text message's inclusion of similar requests that the alleged author had made by phone during the same time period; and (4) the text message's reference to the author by the alleged author's nickname. *See id.*

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d). This includes both oral and written expressions. TEX. R. EVID. 801(a)(1). "An out-of-court

3

statement which is not offered to prove the truth of the matter asserted therein, but is offered for some other reason, is not hearsay." ***Jones v. State***, 466 S.W.3d 252, 263 (Tex. App.–Houston [1st Dist.] 2015, pet. ref'd); ***Stafford v. State***, 248 S.W.3d 400, 407 (Tex. App.–Beaumont 2008, pet. ref'd) (citing ***Guidry v. State***, 9 S.W.3d 133, 152 (Tex. Crim. App.1999)). A statement is not hearsay if its relevancy does not hinge on its truthfulness. ***Johnson v. State***, 425 S.W.3d 344, 346 (Tex. App.–Houston [1st Dist.] 2011, pet. ref'd).

**Analysis**

In its brief, the State first argues that the statements in the text messages at issue are not hearsay because they were not offered for the truth of the matters asserted, but rather were introduced to prove Appellant's knowledge and intent. *See* TEX. R. EVID. 801(d)(2). We disagree. "Matter asserted" means any matter a declarant explicitly asserts as well as any matter implied by the statement if the probative value of the statement as offered flows from the declarant's belief about the matter. *See* TEX. R. EVID. 801(c). Here, Appellant was charged with committing aggravated robbery. The first three text messages at issue purport to be instructions given by Appellant to his accomplices regarding (1) how to get to the scene of the robbery, (2) how to threaten an employee during the robbery, and (3) where to put the money after the robbery. Appellant's involvement in the robbery is implied by these text messages, and the statements' respective probative values flow from his alleged belief that these instructions be heeded. *See id.*; *cf.* ***Black v. State***, 358 S.W.3d 823, 831 (Tex. App.–Fort Worth 2012, pet. ref'd) (text messages expressing desire to engage in drug transaction offered for truth of matter asserted in drug case). Likewise, the implication from the final text message is that Appellant desperately is attempting to contact his girlfriend, the getaway driver, following the robbery. *See* TEX. R. EVID. 801(c). The probative value of this message likewise flows from Appellant's belief about the matter asserted. *See id.* Thus, we conclude that the text messages at issue were offered for the truth of the matter asserted.

The State next argues that the text messages are not hearsay because they were statements by a party opponent. Statements that constitute admissions by a party opponent are not hearsay. *See* TEX. R. EVID. 801(e)(2). These include a party's own statement, a statement that he has adopted or in which he has manifested a belief in its truth, and a statement made by a coconspirator during the course and in furtherance of the conspiracy. *See* TEX. R. EVID. 801(e)(2)(A), (B), (E); ***Trevino v. State***, 991 S.W.2d 849, 853 (Tex. Crim. App. 1999). At the time of the admission of

4

this exhibit, the evidence of record established that the text messages originated from a phone number associated with a phone belonging to Appellant. However, there was no other evidence,[3] either direct or circumstantial, to support that Appellant was the author of these text messages or that they were sent while the phone was in his possession. *See Black*, 358 S.W.3d at 832 (requiring showing that the appellant wrote or ratified text messages or that messages were written while phone in his possession to establish the appellant as declarant under hearsay rule). Consequently, we hold that the contents of the text messages at issue were inadmissible hearsay and the trial court abused its discretion by admitting the exhibit of which they are a part.

**Harm Analysis**

Pursuant to Texas Rule of Appellant Procedure 44.2(b), "[a]ny other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." TEX. R. APP. P. 44.2(b). A substantial right is affected if the error had a substantial and injurious effect or influence in determining the jury's verdict. *See Barshaw v. State*, 342 S.W.3d 91, 93–94 (Tex. Crim. App. 2011); *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010); *Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005). If the error did not influence the jury or had but a slight effect, the error is harmless. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). An appellate court should examine the record as a whole when conducting its harm analysis. *See Motilla v. State*, 78 S.W.3d 352, 358 (Tex. Crim. App. 2002). In conducting its harm analysis, an appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the trial court's instructions to the jury, the state's theory, any defensive theories, closing arguments, and even voir dire, if material to the appellant's claim. *See Motilla*, 78 S.W.3d at 355–56; *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). In assessing harm, the factors to be considered are the nature of the evidence supporting the verdict, the character of the alleged error, and how the evidence might be considered in connection with the other evidence in the case. *See Motilla*, 78 S.W.3d 355; *Morales*, 32 S.W.3d at 867. The court also may consider whether the state emphasized the error and whether overwhelming evidence of guilt was present. *See Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014).

---

[3] Later during the proceedings, Appellant testified that he was the author of the text messages at issue. However, there is no indication from the record that the State sought to admit this exhibit conditionally. *See* TEX. R. EVID. 104(b).

We first consider the nature of the extensive evidence supporting the verdict. The State introduced call logs and testimony suggesting that Appellant was on a conference call with his accomplices during the time in which the robbery took place. Williams testified that Appellant was talking to someone on his phone while she removed cash from the self-checkout registers and that he remarked to the person that Williams was "slow." The record reflects that the cash pull from these registers usually occurs prior to midnight and that the timing of the robbery was indicative of the participants' having insider knowledge of this fact. The record further reflects that Appellant stood approximately fifteen feet from one of the perpetrators, a person he knew, but that he did not acknowledge seeing this acquaintance and avoided making eye contact with her. Moreover, the evidence demonstrated that Appellant and all of the participants in the robbery lived in Louisiana. Yet, the participants made the long drive to rob the WalMart in south Tyler, Texas, where Appellant was employed as the overnight assistant manager. No other evidence connected the other participants to Tyler, Texas, other than Appellant's role as an employee of this WalMart. The evidence also indicated that Appellant made forty-one calls to his girlfriend and getaway driver, Breonna Poole, following the robbery. Other testimony reflects that Appellant appeared to be touching things following the robbery, purportedly in an attempt to cover up his accomplices' fingerprints. Further still, robbery participants Justice Poole and Breonna Poole testified on rebuttal that not only was Appellant involved in the robbery, but the idea for the robbery originated with him and he told each of the participants what to do, both before and during the robbery.[4]

We next consider the character of the trial court's erroneous admission of the exhibit containing Appellant's text messages as well as the relation of this evidence to other evidence in the case, and whether the state emphasized the error. The State's theory at trial was that Appellant was the mastermind behind the robbery, and he directed his accomplices by way of a conference call during the robbery. Appellant's defensive theory was that he was not involved in the robbery, and his connection to the participants therein was coincidental. The text messages undoubtedly tended to connect Appellant to the crime. They also tended to demonstrate that Appellant knew that one of the participants in the robbery would use a gun during its commission. But unlike the call records, these messages were sent either before or after the robbery. On the other hand, the

---

[4] On appeal, Appellant does not challenge whether Breonna's and Justice's respective testimonies sufficiently are corroborated by other nonaccomplice evidence. However, based on our review of the entirety of the record, we conclude that their respective testimonies are corroborated. *See* TEX. CODE CRIM. PROC. ANN. art 38.14 (West 2005).

call records offered stronger support for the State's "mastermind" theory since they indicate that Appellant was on a conference call with several of his accomplices during the course of the robbery. Further, the probative value of the text messages was minimal unless they are considered in the context of the other circumstantial evidence presented by the State tending to connect Appellant to the robbery. And once Breonna and Justice offered rebuttal testimony, the importance of these text messages was diminished since there was direct evidence linking Appellant to the crime. Moreover, during Appellant's testimony, he admitted to authoring the text messages and offered his own innocent explanation for the contents of each message. Thus, the jury had the opportunity to consider the messages outside of the State's "mastermind" theory. Nonetheless, despite its direct evidence linking Appellant to the crime, the State continued to rely on the text messages to a degree, and made multiple references to them during its closing argument to the jury.

Based on our consideration of the record in its entirety, we conclude that the trial court's erroneous admission of the text messages at issue did not have a substantial and injurious effect or influence in determining the jury's verdict and, therefore, did not affect Appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b); *Barshaw*, 342 S.W.3d at 93–94. The case against Appellant was very strong. Further, Appellant later admitted that he was the author of the texts and testified at length concerning an innocent explanation for each of the messages. Therefore, we hold that the trial court's error was harmless. Appellant's sole issue is overruled.

## DISPOSITION

Having overruled Appellant's sole issue, we *affirm* the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered October 17, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

### OCTOBER 17, 2018

### NO. 12-17-00303-CR

**LETROY DEWAYNE MERRITT,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 241st District Court

of Smith County, Texas (Tr.Ct.No. 241-0418-17)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*