# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00499-CV

---

**A. L.-E., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

---

### FROM THE 146TH DISTRICT COURT OF BELL COUNTY
### NO. 23DFAM340750, THE HONORABLE DALLAS SIMS, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

A.L.-E. (Mother) appeals the trial court's Decree of Termination, rendered after a bench trial, which terminates her parental rights to M.L. (Daughter) and N.M. (Son). Mother in her first of two appellate issues challenges the findings made against her under statutory predicate grounds Paragraphs (D) and (E) and under the statutory best-interest ground. *See* Tex. Fam. Code § 161.001(b)(1)(D), (E), (2). And in her second appellate issue, she contends that her appointed attorney gave her ineffective assistance. We conclude that the evidence was sufficient to support the findings on the statutory predicate grounds and on best interest and that Mother has failed to meet her burden under the two prongs of the ineffective-assistance test and thus affirm.

## BACKGROUND

Daughter was 12 years old and Son nearly six at the time of trial. The children had come to the Department's attention when, after Mother had left them in the care of a man who was a stranger to them, they left the caretaker and went to a hair salon to tell other adults what was

happening to them. The man reportedly had been swerving in his car while driving the children around and drinking alcohol and using illegal drugs. When he ran out of gas while at a shopping center, the children walked into the salon, and Daughter told an adult there that the man had been sexually assaulting her. Son had numerous visible injuries on his face. The Department quickly picked up the children and initiated this suit to terminate Mother's parental rights. Early in the suit, the court at the Department's request made a finding of "aggravated circumstances," which permitted the Department to avoid "the requirement of a service plan and the requirement to make reasonable efforts to return the" children to Mother. *See* Tex. Fam. Code § 262.2015(a). As the suit progressed, the court abated in-person visits between Mother and the children, and Mother was arrested and jailed for an aggravated assault with a deadly weapon. She pleaded to the charge and was released from jail, and just under two months later, the final trial in this suit took place.

At the start of trial, the court took judicial notice of the case file, and the Department offered into evidence, without objection, its worker's removal affidavit concerning the children, photos of Son, one of its final Permanency Reports in the suit, and filings from Mother's criminal case. Then the three witnesses at trial were Mother, another Department caseworker, and the children's guardian *ad litem*. After all evidence and argument, the trial court found by clear and convincing evidence that Mother's parental rights to the children should be terminated under predicate grounds Paragraphs (D) and (E) and the best-interest ground. Mother now appeals.

## DISCUSSION

### Statutory predicate grounds and best interest

Mother challenges the legal and factual sufficiency of the evidence supporting the findings made against her under the two elements of termination of parental rights—the statutory predicate ground and the best-interest ground. To terminate parental rights, the Department must

2

prove one of the statutory predicate grounds and that termination is in the best interest of the child. *See* Tex. Fam. Code § 161.001(b)(1), (2); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). It must prove both elements by clear and convincing evidence. *See* Tex. Fam. Code § 161.206(a); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code § 101.007; *accord In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002).

Legal-sufficiency review of the evidence to support termination requires reviewing all the evidence in the light most favorable to the finding under attack, and considering undisputed contrary evidence, to decide whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *See In re A.C.*, 560 S.W.3d 624, 630–31 (Tex. 2018). "Factual sufficiency, in comparison, requires weighing disputed evidence contrary to the finding against all the evidence favoring the finding." *Id.* at 631. "Evidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true." *Id.* When reviewing the evidence, we must "provide due deference to the decisions of the factfinder, who, having full opportunity to observe witness testimony first-hand, is the sole arbiter when assessing the credibility and demeanor of witnesses." *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014).

Mother challenges the findings made against her under statutory predicate grounds Paragraphs (D) and (E), contending that the evidence was legally and factually insufficient to support each finding. "To affirm a termination judgment on appeal, a court need uphold only one termination ground—in addition to upholding a challenged best interest finding—even if the trial

3

court based the termination on more than one ground." *In re N.G.*, 577 S.W.3d 230, 232 (Tex. 2019) (per curiam). But because of the collateral consequences of a Paragraph (D) or (E) finding and the dictates of due process, when on appeal a parent has presented the issue, "an appellate court that denies review of a [Paragraph] (D) or (E) finding deprives the parent of a meaningful appeal and eliminates the parent's only chance for review of a finding that will be binding as to parental rights to other children." *Id.* at 235. "We often conduct evidence-sufficiency reviews under both [Paragraphs (D) and (E)] simultaneously when, as here, the evidence relevant under each is interrelated." *M.L. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-22-00541-CV, 2023 WL 2025710, at *3 (Tex. App.—Austin Feb. 16, 2023, no pet.) (mem. op.).

Paragraph (D) applies when a parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." Tex. Fam. Code § 161.001(b)(1)(D). Paragraph (E) applies when a parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." *Id.* § 161.001(b)(1)(E). For these purposes, "'[e]ndanger' means 'to expose to loss or injury; to jeopardize.'" *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam) (quoting *Texas Dep't of Hum. Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). Although "endanger" means "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury," *id.* (quoting *Boyd*, 727 S.W.2d at 533), or even that the conduct happen in the child's presence, *Pruitt v. Texas Dep't of Fam. & Protective Servs.*, No. 03-10-00089-CV, 2010 WL 5463861, at *4 (Tex. App.—Austin Dec. 23, 2010, no pet.) (mem. op.). *See also A.S. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-23-00658-CV, 2024 WL 1587046, at *5 (Tex. App.—Austin Apr. 12,

4

2024, no pet.) (mem. op.) ("Father's illegal-drug use and repeated conduct leading to incarceration still exposed Child to jeopardy and loss even if Father did not do those things while around Child."). "Endangerment does not have to be established as an independent proposition, but can be inferred from parental misconduct alone," and courts may look to conduct "before the child's birth and both before and after the child has been removed by the Department." *Pruitt*, 2010 WL 5463861, at *4. "A factfinder may infer endangerment from 'a course of conduct' that presents substantial risks to the child's physical or emotional well-being," and "[t]hose risks can be developed by circumstances arising from and surrounding a parent's behavior." *In re R.R.A.*, 687 S.W.3d 269, 277 (Tex. 2024). "Conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being." *Pruitt*, 2010 WL 5463861, at *4.

Important under Paragraph (E) is whether the endangerment of the child's well-being was the direct result of a person's conduct, including acts, omissions, or failures to act. *See T.M. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-21-00174-CV, 2021 WL 4692471, at *6 (Tex. App.—Austin Oct. 8, 2021, pet. denied) (mem. op.); *In re J.F.-G.*, 612 S.W.3d 373, 382 (Tex. App.—Waco 2020), *aff'd*, 627 S.W.3d 304 (Tex. 2021). "Termination under subsection (E) requires more than a single act or omission, and the Department must show a voluntary, deliberate, and conscious course of conduct by the parent, considering a parent's actions both before and after the child was removed from the home." *T.M.*, 2021 WL 4692471, at *6.

Direct physical abuse is clearly conduct that endangers a child. *See In re G.P.*, No. 01-16-00346-CV, 2016 WL 6216192, at *11 (Tex. App.—Houston [1st Dist.] Oct. 25, 2016, no pet.) (mem. op.) (collecting cases). The evidence here showed physical abuse by Mother against Son—a Department worker swore in an affidavit that Son "has bruises on his body and

scars on his face and stomach," "a bruise to the stomach," and "'a lot of welts' on his face" and that Daughter said it was Mother who had caused these injuries. The worker in the same affidavit relayed that Mother also bruises Daughter. Plus, Mother was asked at trial, "Do you beat your children?" and she answered, "Yes."

Also constituting endangering conduct is criminal conduct by the parent, which can subject the child to uncertainty, especially given the potential consequence of incarceration. *See In re B.J.F.*, No. 01-23-00522-CV, 2024 WL 117174, at \*25 (Tex. App.—Houston [1st Dist.] Jan. 11, 2024, pet. denied) (mem. op.); *Smith v. Texas Dep't of Protective & Regul. Servs.*, 160 S.W.3d 673, 682 (Tex. App.—Austin 2005, no pet.). There was evidence of this here—while the suit was pending, Mother was arrested and in jail for over five months. She then pleaded guilty to the second-degree felony of aggravated assault with a deadly weapon.

As for the conditions or surroundings that the parent can place the child in, "[i]nappropriate, abusive, or unlawful conduct by persons who live in the home of the child or with whom the child is compelled to associate on a regular basis in his home inherently is a part of the 'conditions or surroundings' of the child's home under section 161.001(1)(D)." *Castorena v. Texas Dep't of Protective & Regul. Servs.*, No. 03-02-00653-CV, 2004 WL 903906, at \*8 (Tex. App.—Austin Apr. 29, 2004, no pet.) (mem. op.). Thus, evidence that a parent exposed the child to sexual abuse in those conditions or surroundings can suffice under Paragraph (D). *See id.* at \*8–9; *In re W.S.*, 899 S.W.2d 772, 776–77 (Tex. App.—Fort Worth 1995, no writ). The evidence here allowed the trial court to draw the reasonable inference that Mother had subjected the children to sexual abuse. When asked at trial whether she had offered her daughter to others for sex in exchange for lodging, Mother invoked her Fifth Amendment rights. The trial court as factfinder was allowed in this civil case to draw reasonable adverse inferences against Mother

based on her invocations of the Fifth Amendment, including an inference of endangerment to the children. *See W.B. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-23-00461-CV, 2023 WL 8263362, at *9 (Tex. App.—Austin Nov. 30, 2023, no pet.) (mem. op.); *Kilpatrick-Lusk v. Texas Dep't of Fam. & Protective Servs.*, No. 03-05-00548-CV, 2006 WL 3329431, at *2 (Tex. App.—Austin Nov. 16, 2006, no pet.) (mem. op.). Mother also invoked the Fifth Amendment in response to this question: "Did you threaten to beat the shit out of [Daughter] for lying on [the man that Mother had left the children with] about him trying to rub on her vagina?" Also, the Department worker's affidavit relayed that when the children made it to the hair salon, Daughter reported that the man that Mother had left them with had sexually abused the girl.

There was further evidence under Paragraph (D) in that the children were dirty and underfed when coming into Department care and, as relayed by the Department worker's affidavit, Daughter said that the children often went without clean clothes or a hot meal. *See In re P.E.W.*, 105 S.W.3d 771, 778–79 (Tex. App.—Amarillo 2003, no pet.). And there was still other evidence under Paragraph (D) in that Mother had left the children in the care of a stranger, the man whom she had left them with when the children made it to the hair salon. *See In re R.S.*, No. 02-15-00137-CV, 2015 WL 5770530, at *5 (Tex. App.—Fort Worth Oct. 1, 2015, no pet.) (mem. op.); *In re J.A.S.*, No. 07-12-00150-CV, 2012 WL 4372952, at *6 (Tex. App.—Amarillo Sept. 25, 2012, no pet.) (mem. op.).

Mother raises arguments against many of the Department's trial exhibits, including the Department worker's affidavit, by saying that they do not pass muster under Family Code section 104.006. To the extent Mother is arguing for the inadmissibility of the exhibits, any such argument is waived by failure to preserve error in the trial court. *See* Tex. R. App. P. 33.1(a)(1); Tex. R. Evid. 103(a)(1). To the extent Mother is arguing that the exhibits are not legally sufficient

7

evidence under the statutory predicate grounds because of Section 104.006, Mother is stretching that statute beyond what it provides for. It provides for admitting evidence of a report of abuse made by a child 12 years old or younger regardless of whether the evidence would be inadmissible under the hearsay rules so long as

> the court finds that the time, content, and circumstances of the statement provide sufficient indications of the statement's reliability and:
>
> > (1) the child testifies or is available to testify at the proceeding in court or in any other manner provided for by law; or
> >
> > (2) the court determines that the use of the statement in lieu of the child's testimony is necessary to protect the welfare of the child.

*See* Tex. Fam. Code § 104.006; *Garcia v. Texas Dep't of Protective & Regul. Servs.*, No. 03-02-00745-CV, 2003 WL 21466914, at *2 (Tex. App.—Austin June 26, 2003, no pet.) (mem. op.). The statute does not say that evidence is made inadmissible, or legally insufficient to support a judgment, if it does not pass the statute's test for when the evidence can escape the hearsay rules.

Mother also raises her competing testimony from trial, including her denials about hurting the children or her accusing Daughter of lying. But her testimony simply created conflicts in the evidence that the trial court as factfinder was allowed to resolve in favor of its ultimate findings, including by believing Mother to be not credible. *See A.B.*, 437 S.W.3d at 503; *Y.G. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-21-00601-CV, 2022 WL 1144141, at *7 (Tex. App.—Austin Apr. 19, 2022, no pet.) (mem. op.).

We conclude under the applicable legal- and factual-sufficiency standards that the evidence was sufficient to support the findings made against Mother under statutory predicate grounds Paragraphs (D) and (E).

8

The rest of Mother's first appellate issue concerns the legal and factual sufficiency of the evidence to support the best-interest finding made against her. When reviewing best-interest findings, factors that courts consider include (1) the child's wishes, (2) the child's emotional and physical needs now and in the future, (3) emotional or physical danger to the child now and in the future, (4) the parenting abilities of the parties seeking custody, (5) programs available to help those parties, (6) plans for the child by the parties seeking custody, (7) the stability of the proposed placement, (8) the parent's conduct that may indicate that the existing parent–child relationship is improper, and (9) any excuses for the parent's conduct. *In re J.W.*, 645 S.W.3d 726, 746 (Tex. 2022) (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)). This list is not exhaustive, not all factors need be proven to establish best interest, and proof of only one factor may in a particular factual context support termination. *See M.L. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-22-00541-CV, 2023 WL 2025710, at *5 (Tex. App.—Austin Feb. 16, 2023, no pet.) (mem. op.); *S.C. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-20-00039-CV, 2020 WL 3892796, at *16 (Tex. App.—Austin July 10, 2020, no pet.) (mem. op.). Evidence probative under the statutory predicate grounds may also be probative of best interest, *A.C.*, 560 S.W.3d at 631–32, particularly evidence showing endangerment, *see C.H.*, 89 S.W.3d at 28; *M.L. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-22-00541-CV, 2023 WL 2025710, at *5 (Tex. App.—Austin Feb. 16, 2023, no pet.) (mem. op.).

Under the first, desires-of-the-child factor, the evidence was mixed because while some evidence showed that Daughter wanted to "live in a nice foster home," other evidence showed that she did not want Mother's rights terminated and wanted some day to go back to Mother. Yet the trial court as factfinder reasonably could have discounted Daughter's wish to be with Mother because of the evidence of her endangering conduct. *See H.G. v. Texas Dep't of*

9

*Fam. & Protective Servs.*, No. 03-22-00373-CV, 2022 WL 17169847, at \*9 (Tex. App.—Austin Nov. 23, 2022, no pet.) (mem. op.).  And in contrast with Daughter, because Son was too young to express his wishes, the trial court could look to evidence of the minimal time for bonding between the children and Mother.  *See J.M. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-24-00336-CV, 2024 WL 4795260, at \*5 (Tex. App.—Austin Nov. 15, 2024, pet. filed) (mem. op.).  The evidence showed that Mother had not spoken with the children for almost a year before the trial.  At best for Mother, the evidence under this first factor is neutral.

Under the second, third, fourth, seventh, and eighth factors, we consider significant all the evidence that we recounted above under the endangerment predicate grounds.  Mother points out evidence showing that during the suit she found a job and a more permanent place to stay, and these matters indeed cut in her favor.  But overall, the endangerment evidence here shows that the children's lives with Mother would be beset by jeopardy and instability.  *See M.R. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-23-00510-CV, 2024 WL 589907, at \*13 (Tex. App.—Austin Feb. 14, 2024, no pet.) (mem. op.) (stating in best-interest review that "stability and permanence are paramount considerations in evaluating the needs of a child").  Thus, despite Mother's employment and new living situation, and despite the Department's inability to yet find any semi-permanent placement for the children, we conclude that the evidence was legally and factually sufficient to show that it was in the children's best interest that Mother's parental rights be terminated.  We overrule Mother's first issue.[1]

---

[1]  Because of our disposition of the issue of termination of parental rights, Mother lacks standing to challenge, which she has, the trial court's conservatorship rulings in the Department's favor.  *See T.D. v. Texas Dep't of Fam. & Protective Servs.*, 683 S.W.3d 901, 915–16 (Tex. App.—Austin 2024, no pet.).

*Ineffective assistance of counsel*

In her second and final appellate issue, Mother contends that her appointed attorney gave her ineffective assistance by failing to object to the Department's four exhibits and by failing to offer any exhibits on Mother's behalf. A parent who responds in opposition to a government-initiated suit seeking to terminate the parent's parental rights to a child is entitled to effective assistance of counsel and may raise a claim of ineffective assistance on appeal. *See In re D.T.*, 625 S.W.3d 62, 73 (Tex. 2021); *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003). Proving ineffective assistance of counsel requires showing: (1) commission of errors so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment and (2) counsel's deficient performance prejudiced the defense, that is, "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *A.D. v. Texas Dep't of Fam. & Protective Servs.*, 673 S.W.3d 704, 719 (Tex. App.—Austin 2023, no pet.) (quoting *M.S.*, 115 S.W.3d at 545); *accord D.T.*, 625 S.W.3d at 73. "The challenged conduct will constitute ineffective assistance only when 'the conduct was so outrageous that no competent attorney would have engaged in it.'" *D.T.*, 625 S.W.3d at 74 (quoting *M.S.*, 115 S.W.3d at 545). Our review "must take into account all of the circumstances surrounding the case, and must primarily focus on whether counsel performed in a 'reasonably effective' manner." *Id.* (quoting *M.S.*, 115 S.W.3d at 545). The parent must prove ineffective assistance by a preponderance of the evidence. *A.D.*, 673 S.W.3d at 720.

When, as here, the record is silent about trial counsel's reasons for the acts or omissions that the appellant complains of, "we defer to counsel's decision if there is at least the possibility that the conduct could have been legitimate trial strategy." *Id.* "In a parental-rights termination case where the parent asserts on appeal the ineffective assistance of trial counsel, but

nothing in the record indicates trial counsel's reasons or strategies for the complained-of conduct, the lack of a record is practically always fatal to the parent's appellate issue." *Id.*

Overall for Mother's complaints about trial counsel's failure to object to the Department's exhibits, we conclude that trial counsel was not ineffective because "[a]n attorney can reasonably decide not to object to inadmissible evidence" to, for example, help show personal accountability and improvement in parenting ability. *See Newsom v. Department of Fam. & Protective Servs.*, No. 01-09-00447-CV, 2010 WL 670568, at *8 (Tex. App.—Houston [1st Dist.] Feb. 25, 2010, no pet.) (mem. op.).

For some of the exhibits more particularly, one of the exhibits was one of the Department's final Permanency Reports to the trial court. Yet before the Department offered that exhibit for admission into evidence, the trial court had without objection taken judicial notice of its file, which included the same Report. Trial courts are allowed to take judicial notice of their own orders and records, so trial counsel could have reasonably determined that it would have been futile to object. *A.D.*, 673 S.W.3d at 722. We thus conclude that trial counsel was not ineffective for not objecting to this exhibit.

Another exhibit was a set of pictures of the injuries on Son's body. Mother says that her trial counsel should have objected on the grounds that the photos were hearsay, irrelevant, not authenticated, and inadmissible under Rule of Evidence 403. Any such hearsay, relevance, or authentication objections would have been futile, so trial counsel was not ineffective for not raising those objections. *See id.* (no ineffective assistance for complained-of failure to object when trial counsel reasonably could have determined that any objection would have been futile). The photos were not hearsay. *See Black v. State*, 358 S.W.3d 823, 831 (Tex. App.—Fort Worth 2012, pet. ref'd) ("[T]he screensaver picture of what appeared to be methamphetamine was not a

statement; it was therefore not hearsay."). They were indisputably relevant. *See, e.g.*, *In re P.M.*, No. 07-04-00595-CV, 2006 WL 407077, at *2 (Tex. App.—Amarillo Feb. 22, 2006, pet. denied) (mem. op.) (photos relevant to show injuries to child in suit to terminate parent's rights). And witnesses at trial, including Mother herself, provided testimony based on which the photos could have been authenticated if trial counsel had objected. *See generally* Tex. R. Evid. 901; *see, e.g.*, *In re P.W.*, No. 02-21-00219-CV, 2021 WL 6068944, at *4–5 (Tex. App.—Fort Worth Dec. 23, 2021, no pet.) (mem. op.) (authentication of photos by witness testimony). As for the hypothetical Rule 403 objection, even if such an objection would have succeeded, *but see Murray v. Texas Dep't of Fam. & Protective Servs.*, 294 S.W.3d 360, 368 (Tex. App.—Austin 2009, no pet.) ("To exclude evidence under Rule 403 'is an extraordinary remedy that must be used sparingly.'" (quoting *Trevino v. Texas Dep't of Protective & Regul. Servs.*, 893 S.W.2d 243, 248 (Tex. App.—Austin 1995, no writ))), an attorney can reasonably decide not to object to inadmissible evidence for a number of reasons, *see Newsom*, 2010 WL 670568, at *8. Trial counsel's not objecting to the photos was not ineffective assistance.

As for the remaining two exhibits—the Department worker's affidavit and a packet of filings from Mother's aggravated-assault case—we conclude that trial counsel's failure to object to the exhibits did not prejudice Mother: for both exhibits, all or nearly all of their content that was prejudicial to Mother was admitted into evidence otherwise through witness testimony. *See In re S.N.R-T.*, No. 14-23-00358-CV, 2023 WL 7498202, at *8 (Tex. App.—Houston [14th Dist.] Nov. 14, 2023, no pet.) (mem. op.). For example, the affidavit supplied details about Daughter's outcries of being offered out for sex by her Mother, but Mother's invocations of the Fifth Amendment at trial allowed the trial court to draw inferences against Mother on the same matters.

13

Finally, Mother argues that her trial counsel was ineffective for not offering as evidence exhibits like

> photos of Mother's residence or a copy of her name on a lease at the time of trial to show that Mother had a safe and stable home, photos of Mother's paystubs evidencing she could pay child support and was working at lawful employment, copies of receipts for the therapy that Mother testified she gave the Children in other States, if not the therapy notes themselves accompanied by a business record affidavit and filed at least 10 days before trial, any photographs of the Children prior to removal in their surroundings, communications by or to the caseworker, anything Mother had done since being released from incarceration, or even redacted copies of prior Permanency Reports to demonstrate inconsistencies with Petitioner's Exhibit #3, such as cut and paste descriptions, or omissions about [Son]'s violent behavior and aggressiveness at school.

Yet any of the matters that could have been elicited by exhibits like these could have been elicited on direct examination of Mother or on cross-examination of Department witnesses. Mother raises no complaint about the effectiveness of her trial counsel's examinations of witnesses. And Mother has not shown that her trial counsel's strategic decisions about presenting witness testimony, cross-examining witnesses, and presenting argument were decisions so outrageous that no competent attorney would have done the same. *See D.T.*, 625 S.W.3d at 74. Trial counsel's efforts in those regards focused on identifying a relative placement for the children that could ward off needing to terminate Mother's parental rights and on showing that the Department had not met its evidentiary burden. We thus conclude that Mother has not carried her burden to show deficient performance in the failure to offer exhibits. We overrule her second and final issue.

14

## CONCLUSION

We affirm the trial court's Decree of Termination.

_____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed

Filed:   January 8, 2025