**Affirm; Opinion Filed August 17, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-19-01136-CR**

**No. 05-19-01161-CR**

**MARGARITO MARTIN GARCIA, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 195th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause Nos. F18-71156-N and F18-71157-N**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Pedersen, III, and Goldstein
Opinion by Justice Pedersen, III

A jury convicted Margarito Martin Garcia of two offenses: (1) possession with intent to deliver over four grams but less than 200 grams of methamphetamine (Cause No. 05-19-01136-CR) and (2) possession with intent to deliver over four grams but less than 200 grams of cocaine (Cause No. 05-19-01161-CR). The trial court assessed Garcia's punishment at twenty years' confinement in the Institutional Division of the Texas Department of Criminal Justice for each case and ordered that the sentences run concurrently. In eight issues, Garcia contends that the evidence was insufficient to support the jury's verdicts on both offenses, the trial court erred

in denying his motion to suppress and his requested jury charge, and the trial court abused its discretion in ruling on the admissibility of certain evidence.

In a cross-point, the State requests that the trial court's judgments be modified to accurately reflect that Garcia was convicted of possession with intent to deliver and not with manufacturing and that he pleaded not true to the enhancement paragraphs. We modify the judgments and affirm the trial court's judgments as modified.

## Background

On November 11, 2017, detectives and officers from the Dallas Police Department's SWAT team went to an apartment complex at 3810 Bonnie View, Dallas, Texas, to execute a search warrant at apartment 208. The lead detective on the case—Detective Enriquez—had been investigating apartment 208 and had purchased drugs from that location. Detective Thomas Schiller and his partner, Detective Womack, were at the property to assist Detective Enriquez with the execution of the search warrant. Detective Schiller testified that the SWAT team entered the building first while the detectives waited outside. Shortly after clearing apartment 208,[1] however, a SWAT officer accidentally fired his weapon, shooting himself in the leg. After some delay to make sure that no one else was hurt, the detectives went into the building to conduct their search.

---

[1] Detective Schiller explained that when police "clear" a location, they are making sure that no one is inside.

On their way to apartment 208, Detective Schiller and Detective Womack passed by apartment 107 and noticed that the apartment door was wide open. Finding this odd, especially since a shooting had just occurred, the detectives stood at the doorway and announced themselves as police. They saw, in plain view on the living room floor, a yellow bag containing a substance that appeared to be cocaine. Detective Schiller instructed SWAT officers to enter and clear apartment 107. He stated that he wanted to make sure that (1) no one was in the apartment who could possibly destroy evidence, and (2) no one had been injured by the accidental discharge of the firearm upstairs.

Detective Schiller prepared a search-warrant application for apartment 107. Once the warrant was issued, the detectives entered and found, throughout the apartment, various amounts of substances that appeared to be cocaine, methamphetamine, marijuana, ecstasy, and alprazolam (Xanax). They found digital scales, packaging materials, and two plates that appeared to have been used for drug consumption. One plate contained a straw and what appeared to be cocaine residue; the other plate contained a razor blade and what appeared to be rock cocaine. In the living room, the detectives found an SKS rifle on the floor behind one of the sofas. In the living room and a bedroom, they found numerous documents and mail addressed to Garcia at 3810 Bonnie View, apartment 104. They also found documents belonging to John Henderson. They found men's jeans, pants, and sweat pants—some had what appeared to be cocaine and packaging supplies in the pockets.

Three cell phones were on the kitchen counter. The plates, the suspected drugs, the gun, the cell phones, and the documents were collected as evidence.

The substances found in apartment 107 were transported to the Southwestern Institute of Forensic Sciences (SWIFS) for testing and analysis. Julian Aguilar, a controlled substance analyst for SWIFS, testified that he examined the various substances submitted[2] and found, at a minimum, approximately 5.5 grams of cocaine and 4.5 grams of methamphetamine.

Detective Schiller testified that he obtained a separate search warrant for the cell phones seized from apartment 107. Detective Brandon Griffin, a detective in the Dallas Police Department's Fusion Center,[3] testified that using a software tool called Cellebrite, he was able to extract between five and six gigabytes of data from the Samsung cell phone seized from apartment 107. His extraction report was admitted into evidence. Detective Griffin and Detective Schiller both reviewed the data from the Samsung phone, and they concluded that the phone belonged to Garcia.

Detective Schiller testified that apartment 107 was leased to Yadria Henderson,[4] Garcia's sister-in-law. He also testified that one of Yadria's relatives, Devonte Henderson, and a man by the name of Bernard Anglin were arrested in

---

[2] Aguilar explained that when multiple substances are submitted for testing, the lab does not analyze every substance. For efficiency purposes, the lab determines which substances to completely analyze based on the amount and the level of penalty that can be charged for the offense of possessing that substance.

[3] Detective Griffin testified that the Fusion Center assists officers and detectives in criminal investigations involving information or data on computers, cell phones, tablets, and other technology.

[4] Yadria Henderson is actually the wife of Garcia's cousin, Jose. Garcia was raised with Jose; Garcia refers to Jose as his brother and his cousin. He refers to Yadria as his sister-in-law.

connection with the drugs found during the execution of the search warrant at apartment 208. Videos of Bernard were found on Garcia's Samsung phone and on his Facebook page, and text messages between Garcia and Devonte discussing drug deals were found on Garcia's phone. Detective Schiller determined that all of these people were working together to sell drugs out of both apartment 208 and apartment 107.

Garcia was arrested approximately six months later, and he was charged with two offenses: (1) possession with intent to deliver methamphetamine in an amount of four grams or more but less than 200 grams, and (2) possession with intent to deliver cocaine in an amount of four grams or more but less than 200 grams. The State subsequently filed notice of intent to seek a finding that the offenses were committed in a drug-free zone, within 1,000 feet of a school or playground. The State also filed notice of intent to seek a deadly weapon finding in connection with the firearm that was seized from the apartment.

Before the jury trial began, the court conducted a hearing on Garcia's motion to suppress the evidence seized from apartment 107. Garcia asserted that the Dallas Police Department did not have reasonable suspicion to enter apartment 107, and they did not have a warrant to do so. The court found that Garcia did not have standing to contest the search and denied his motion to suppress. At the close of evidence, the jury was instructed on the indicted offenses and the lesser-included offenses of possession of methamphetamine and possession of cocaine. The jury was

also instructed on the law of parties. The deadly-weapon allegation was submitted to the jury as a special issue, but the drug-free zone issue was not submitted to the jury. The jury found Garcia guilty of both indicted offenses but declined to make a deadly-weapon finding.

Following a hearing on punishment, the trial court assessed Garcia's punishment at twenty years' confinement in each case and ordered that the sentences run concurrently. This appeal followed.

## Sufficiency of the Evidence

In his first issue, Garcia contends that the evidence is insufficient to support the jury's guilty verdict on both charges. We review a sufficiency challenge by examining the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Johnson v. State*, 560 S.W.3d 224, 226 (Tex. Crim. App. 2018). The jury is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) "When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination." *Murray v. State*, 457 S.W.3d 446, 448–49 (Tex. Crim. App. 2015) (citing *Hooper v. State*, 214 S.W.3d 9, 12 (Tex. Crim. App. 2007)). "A jury may accept one version of the facts

and reject another, and it may reject any part of a witness's testimony." *Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018).

Garcia was charged with possession with intent to deliver more than four grams of methamphetamine and more than four grams of cocaine. TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d). To prove the requisite intent to possess, the State was required to prove that Garcia: (i) exercised control, management, or care over the substance in question and (ii) knew that the substance was contraband. *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016). Regardless of whether this evidence is direct or circumstantial, it must establish that a defendant's connection to the contraband was more than fortuitous. *Blackman v. State*, 350 S.W.3d 588, 594–95 (Tex. Crim. App. 2011). Mere presence at the location where drugs are found is insufficient, by itself, to establish the requisite degree of control to support a conviction. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). However, possession need not be exclusive. *Henry v. State*, 409 S.W.3d 37, 42 (Tex. App.—Houston [1st Dist.] 2013, no pet.). Where, as here, the defendant was not in exclusive possession of the place where the substance was found, there must be additional independent facts and circumstances that link him to the contraband. *Tate*, 500 S.W.3d at 413–14. Although the traditional "affirmative links" analysis[5] does not

---

[5] Texas courts have recognized a non-exclusive list of possible "affirmative links" as sufficient, either singly or in combination, to establish a defendant's possession of contraband. *See Evans*, 202 S.W.3d at 162 n.12.

readily apply here because Garcia was not present when apartment 107 was searched and the drugs were seized, "[t]he number of linking factors present is not as important as the logical force they create to prove the crime was committed." *Villarreal v. State*, No. 05-13-00629-CR, 2014 WL 3056509, at \*4 (Tex. App.—Dallas July 7, 2014, no pet.) (not designated for publication).

Intent to deliver[6] may be proved by circumstantial evidence, such as the quantity of drugs possessed, the manner of packaging, whether the defendant possessed a large amount of cash, evidence of drug transactions, and the nature of the location where the defendant was arrested. *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.); *Smith v. State*, 737 S.W.2d 933, 941 (Tex. App.—Dallas 1987, writ ref'd). Intent to deliver is a question of fact for the jury to resolve, and it may be inferred from the acts, words, or conduct of the defendant. *Taylor*, 106 S.W.3d at 831.

The State presented evidence linking Garcia to apartment 107. Numerous personal documents and mail sent to Garcia were found throughout the apartment.[7] In his appellate brief, Garcia concedes that he temporarily moved into apartment 107 a few days before the police searched the apartment. Thus, Garcia had the right to possess the place where the contraband was found. However, he argues, and the State

---

[6] "Deliver" means to transfer, actually or constructively, to another a controlled substance, including an offer to sell a controlled substance. HEALTH & SAFETY § 481.002(8).

[7] These documents included documents from Methodist Hospital and the Internal Revenue Service, a job application, and documents pertaining to Garcia's auto insurance.

acknowledges, that he was not in exclusive possession of the apartment. The apartment was leased to his cousin's wife, Yadria Henderson, and there was evidence that other family members spent time in the apartment.[8] Further, Garcia was not present in the apartment when the police executed the search warrant and seized the contraband—no one was in the apartment when it was searched.

The evidence establishes that the drugs were in plain view, and that other contraband and drug paraphernalia were present. In addition to the cocaine and methamphetamine seized, officers recovered marijuana, ecstasy, alprazolam and digital scales used for weighing drugs. They also recovered three cell phones and a firearm. Garcia denies that the drugs seized by the police belonged to him, and he argues there is no evidence that he was selling drugs. However, Garcia's fingerprints were found on the two plates that were seized from apartment 107. Detective Schiller testified that one plate contained cocaine residue and a straw with a tip that had been cut diagonally; he stated that the other plate contained pieces of rock cocaine and a razor blade. Garcia argues that this only shows that he used cocaine, not that he sold it or owned it. However, the jury could have rationally inferred that Garcia came in contact with the paraphernalia as it was used to prepare the drugs for sale.

Detective Griffin extracted between five and six gigabytes of data from the Samsung cell phone found on the kitchen counter of apartment 107. The extraction

---

[8] During their search, police found documents and pill bottles bearing the name of John Henderson.

report was admitted into evidence as State's Exhibit 86; and select portions of the report were admitted into evidence separately. The extracted data included user-account information for various applications that had been accessed from the phone, including Gmail, Facebook, Hangouts, and Snapchat. Detective Griffin described how emails from the Gmail account and photos and posts from the Facebook account connected those accounts and the Samsung cell phone number to Garcia. The report showed that the WiFi hot-spot password for the phone was "D214RITO." The Gmail account had an address of RitoG214@gmail.com, and the phone number associated with the Gmail account was the phone number for the Samsung cell phone. The Facebook account belonged to "Kasharito Garcia" and was associated with the Samsung phone number. The Hangout app accessed from the Samsung phone belonged to user name "Rito Garcia," and the Snapchat app belonged to user name "Don Rito." The phone also contained "selfie" photos of Garcia in front of and inside apartment 107. Garcia admitted these were photographs of him.

Detective Griffin testified that data extracted from the Samsung cell phone included a number of videos that had been created on that phone. Some of these videos were admitted into evidence and published to the jury. Two videos showed Garcia in front of the door to apartment 107; one video contained a reference to the apartment as a "trap house," a common term for a drug house. In several videos, a wrist tattoo can be seen—the same wrist tattoo that Detective Schiller testified he had seen on Garcia's wrist. Other videos showed Garcia with a loaded magazine for

a semi-automatic rifle. One video showed Garcia waving a stack of money and counting it; another showed distinctively wrapped pills and powder. This evidence creates a reasonable inference that Garcia was aware of the contraband in the apartment that he possessed.

Most incriminating, however, were the numerous text messages to and from the Samsung phone in which drug deals were discussed by various individuals. Although Garcia claimed that the Samsung phone did not belong to him, one of the text messages sent to the Samsung phone asked "Why they call you M?" The reply sent from the Samsung phone was "Because my first name is Margarito." There were numerous messages detailing what drugs were for sale and when they would be available. In some of the text messages, customers were directed to apartment 107. In one of the messages from the Samsung phone to an individual referred to as "K," the sender explained that it was time for him to run his own spot but he needed to put that spot in someone else's name. Detective Schiller explained that this meant that Garcia did not want to leave a paper trail; he wanted someone else to lease the apartment and to sublease it to him so he could sell drugs out of that apartment.

The quantity and variety of drugs, the digital scales, and the packaging seized from apartment 107 are all evidence of intent to distribute. *See Taylor*, 106 S.W.3d at 831. Detective Schiller testified that most of the drugs found in the apartment were already packaged for individual sale. He opined that the amount of drugs seized was more than what is typical for personal use. The total weight of the powder cocaine

and crack cocaine seized was 21.2 grams. The total weight of methamphetamine seized was 21.7 grams.

Even assuming that others in apartment 107 may have had access to the drugs, the State presented evidence that specifically linked Garcia to possession and intent to deliver the drugs seized from apartment 107. After examining the evidence in the light most favorable to the verdict, we conclude that rational jurors could have found the essential elements of these offenses beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. Thus, sufficient evidence supports the jury's verdicts finding Garcia guilt of both possession with intent to deliver more than four grams of methamphetamine, and possession with intent to deliver more than four grams of cocaine. We overrule Garcia's first issue.

### Motion to Suppress

In his second issue, Garcia contends that the trial court erred in denying his motion to suppress the warrantless search of apartment 107.[9] He further contends that the trial court erred in finding that he did not have standing to contest the search. We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard. *State v. Ruiz*, 577 S.W.3d 543, 545 (Tex. Crim. App. 2019); *State v. Staton*, 599 S.W.3d 614, 616 (Tex. App.—Dallas 2020, pet. ref'd). "We give almost total deference to the trial court's findings of fact and review *de novo* the application of

---

[9] Detective Schiller testified that he obtained a warrant prior to searching apartment 107. At trial, the Affidavit, Search Warrant, and Return were admitted for record purposes as State's Exhibit 1.

–12–

the law to the facts." *Ruiz*, 577 S.W.3d at 545. We view the record in the light most favorable to the trial court's ruling and uphold the ruling if it is supported by the record and is correct under any theory of the law applicable to the case. *Valtierra v. State*, 310 S.W.3d 442, 447–48 (Tex. Crim. App. 2010).

The Fourth Amendment of the United States Constitution and Article I, Section 9 of the Texas Constitution protect individuals from unreasonable searches and seizures. *See* U.S. CONST. amend IV; TEX. CONST. art. I, § 9; *State v. Betts*, 397 S.W.3d 198, 203 (Tex. Crim. App. 2013). Any defendant seeking to suppress evidence obtained in violation of the Fourth Amendment must first show that he personally had a reasonable expectation of privacy that the government invaded. *Betts*, 397 S.W.3d at 203. The defendant has the burden to show that he had a subjective expectation of privacy in the place searched that society is prepared to recognize as reasonable. *Granados v. State*, 85 S.W.3d 217, 223 (Tex. Crim. App. 2002).

In considering whether a defendant has demonstrated an objectively reasonable expectation of privacy in the place that was searched, we examine the totality of the circumstances surrounding the search, including:

(1) whether the accused had a property or possessory interest in the place invaded;

(2) whether he was legitimately in the place invaded;

(3) whether he had complete dominion or control and the right to exclude others;

–13–

(4) whether, before the intrusion, he took normal precautions customarily taken by those seeking privacy;

(5) whether he put the place to some private use; and

(6) whether his claim of privacy is consistent with historical notions of privacy.

*Betts*, 397 S.W.3d 203–04.

The trial court conducted a hearing on Garcia's motion to suppress. Detective Schiller testified that Garcia's name was not on the lease for apartment 107. The apartment was leased to Yadria Henderson, and there was nothing in the lease to indicate that Garcia was authorized to stay or live in apartment 107. Detective Schiller testified that no one was in apartment 107 when the police searched it. During the search, the detectives found mail addressed to appellant and other documents bearing his name; however, the mail addressed to appellant was not addressed to apartment 107.[10] Detective Schiller testified that appellant's fingerprints were found in apartment 107. The police also found clothing in the apartment that could have belonged to appellant. Following argument by both parties, the trial court found that appellant did not have standing to contest the search.

After discussion of other matters, defense counsel asked to reopen the suppression hearing to call Garcia for the limited purpose of testifying regarding standing. Garcia then testified that he lived in apartment 104 with his older brother,

---

[10] This mail was addressed to appellant at 3810 Bonnie View, apartment 104.

Michael Garcia. He testified that apartment 107 was leased to Yadria Henderson, his cousin's wife. He further testified that he never stayed in apartment 107 as an overnight guest. Finally, the court questioned why defense counsel was proving that Garcia lived in apartment 104 when the drugs were seized from apartment 107. Defense counsel apologized, said that he meant to say 107, and claimed that Garcia "moved around apartments." But the court was not persuaded by counsel's explanation, noting that Garcia had just testified, under oath, that he lived in apartment 104. The trial court stated that it would not change its previous ruling that Garcia lacked standing to contest the search of apartment 107.

Garcia testified at trial; he changed his testimony and testified that he was living in apartment 107 in November 2017 when the police searched the apartment. However, this testimony is irrelevant with respect to our review of the trial court's denial of Garcia's motion to suppress because this testimony occurred at trial, not at the hearing on Garcia's motion to suppress evidence. Generally, appellate review of a trial court's ruling on a motion to suppress is limited to the record as it existed at the time of the suppression hearing. *O'Hara v. State*, 27 S.W.3d 548, 551 (Tex. Crim. App. 2000); *Amos v. State*, No. 05-12-00908-CR, 2013 WL 3554305, at *8 (Tex. App.—Dallas July 11, 2013, no pet.) (not designated for publication). Appellate review may include evidence adduced at trial when "the suppression issue has been consensually re-litigated by the parties during trial on the merits." *See Turrubiate v. State*, 399 S.W.3d 147, 151 (Tex. Crim. App. 2013) (quoting *Rachal*

*v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996)). Here, however, the parties do not indicate that the suppression issue was consensually re-litigated during the trial, and the record does not support such a conclusion. Accordingly, given Garcia's testimony at the suppression hearing, we conclude that he failed to demonstrate an objectively reasonable expectation of privacy in apartment 107, the place that was searched. *Betts*, 397 S.W.3d 203–04. The trial court did not err in denying Garcia's motion to suppress. We overrule Garcia's second issue.

**Admissibility of Evidence**

In his third through seventh issues, Garcia complains about the admission of evidence. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019); *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). The trial court abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably. *Rhomer*, 569 S.W.3d at 669 (citing *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)). We will not reverse the trial court's ruling unless it falls outside the zone of reasonable disagreement. *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018).

*A. Contents of Cell Phone*

In his third issue, Garcia contends that the trial court erred in overruling his objection to the contents of the Samsung cell phone that was seized from apartment 107. During a hearing outside the presence of the jury to consider pretrial motions,

Garcia urged that the contents of the Samsung cell phone should be suppressed because (1) it was not his phone, (2) the contents were hearsay, (3) they were more prejudicial than probative, and (4) they were not relevant. In response, the State explained that the Samsung cell phone had been seized during the police search of apartment 107, and the contents of the phone had been extracted pursuant to a separate search warrant. The State described the data extracted from the phone and asserted that this data revealed that Garcia owned the phone. The State urged that Garcia's argument that the State did not have enough information to link the contents of the phone to Garcia was an issue of the weight of the evidence, not its admissibility. After argument by both parties, the trial court overruled Garcia's objections and denied his motion to suppress.

During trial, when the State offered a summary of the data extracted from the Samsung phone into evidence, defense counsel objected "on grounds of hearsay, more prejudicial than probative of the facts in this case." The trial court overruled the objection and admitted the extraction summary.

On appeal, Garcia complains generally that the cell phone had hearsay information concerning him—he does not specify what information was inadmissible hearsay. "Hearsay" is defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Rule of Evidence 801(e) identifies circumstances in which certain statements are not hearsay. *Paredes v.*

–17–

*State*, 129 S.W.3d 530, 534 (Tex. Crim. App. 2004). A statement is not hearsay if the statement is offered against a party and is the party's own statement in either an individual or representative capacity. TEX. R. EVID. 801(e)(2)(A); *see Trevino v. State*, 991 S.W.2d 849, 853 (Tex. Crim. App. 1999).

Garcia cites *Black v. State*, 358 S.W.3d 823 (Tex. App.—Fort Worth 2012, pet. ref'd), to support his argument that text messages on the phone were hearsay because it was not known whether he was the person who sent them. In *Black*, officers obtained a search warrant to examine the contents of a cell phone found when they searched Black. The court concluded that written text messages on the phone were hearsay and that no hearsay exception justified their admission because there was (i) no showing appellant wrote or ratified any of the messages and (ii) no showing the messages were written while the cell phone was in appellant's possession. *Black*, 358 S.W.3d at 831–32. The court further concluded the messages did not qualify as statements made against his penal interest and did not fall within that exception to the hearsay rule. *Id*. at 832.

In *Black*, however, the court did not address whether the identity of the sender of those text messages could have been authenticated through circumstantial evidence. "Printouts of emails, internet chat room dialogues, and cellular phone text messages have all been admitted into evidence when found to be sufficiently linked to the purported author so as to justify submission to the jury for its ultimate determination of authenticity." *Tienda v. State*, 358 S.W.3d 633, 639 (Tex. Crim.

App. 2012); *see Manuel v. State*, 357 S.W.3d 66, 75 (Tex. App.—Tyler 2011, pet. ref'd) (emails, text messages, Facebook messages may be properly authenticated if appearance, contents, substance or other distinctive characteristics, taken in conjunction with circumstances, support finding document is what its proponent claims); *Jimenez v. State*, No. 05-13-01523-CR, 2014 WL 6678073, at *3-4 (Tex. App.—Dallas Nov. 25, 2014, no pet.) (not designated for publication) (identity of sender of text messages authenticated through circumstantial evidence; text messages not hearsay but admissible as admission by a party).

Here, the cell phone was found on the kitchen counter of apartment 107. Garcia testified that he was living in this apartment at the time the police searched the apartment. The phone contained a variety of data indicating the phone belonged to Garcia, including user-account information for Gmail, Facebook, Hangouts, and Snapchat, "selfie" photographs of Garcia, videos of Garcia standing in front of the door of apartment 107, and posts made from the phone to Garcia's Facebook page. Text messages on the phone indicated that Garcia was the sender of text messages sent from that phone.[11] Other text messages sent from the phone to various individuals described what drugs were for sale, indicated when specific drugs would be available, and directed customers to apartment 107. For example, the phone contained text messages sent from the phone to "Alex" stating, "I had to buy some

---

[11] One text message sent to the phone asked "Why they call you M?" The reply sent from the Samsung cell phone was, "Because my first name is Margarito."

more powder!" Alex asked "why," to which the sender responded "To sale I ran out!! Dats where most my money come from." In another exchange with Alex, the sender texted, "I ran out of bars!!! I need some more bad they blowing up my phone." Based on the record in this case, the trial court could have reasonably determined that the text messages were conversations between Garcia and other individuals discussing potential drug transactions. The trial court could have found that the text messages, which were offered against Garcia, contained his statements in either a representative or individual capacity. Thus, the text messages sent by Garcia were not hearsay; instead they constituted an admission by a party and were properly admitted into evidence under rule 801(e)(2)(A). *See Jiminez*, 2014 WL 6678073, at *4. We therefore cannot say that the trial court abused its discretion by overruling Garcia's hearsay objection to the text messages on the Samsung cell phone. We overrule his third issue.

### B. Drug-Free Zone Map

In his fourth issue, Garcia complains that the trial court erred in overruling his hearsay objection and admitting a drug-free zone map showing the distance between the apartment complex and a playground at El Shaddai Village. The State contends this issue is moot because this Court's resolution of Garcia's issue would make no difference in the outcome of these appeals. Although the trial court admitted the map into evidence over Garcia's hearsay objection, the drug-free-zone issue was not submitted to the jury, and no finding was made on the issue.

Generally, a cause, issue, or appeal is moot when the court's action on the merits cannot have any practical legal effect on the rights of the parties. *See State v. Nayeb*, No. 05-15-00279-CR, 2016 WL 165686, at \*4 (Tex. App.—Dallas Jan. 13, 2016, no pet.) (mem. op., not designated for publication) (citing *Smith v. State*, 848 S.W.2d 891, 893 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd)). Any opinion by an appellate court ruling on a moot issue would be purely advisory, and Texas courts have no jurisdiction to issue advisory opinions. *See Pfeiffer v. State*, 363 S.W.3d 594, 601 (Tex. Crim. App. 2012); *Armstrong v. State*, 805 S.W.2d 791, 794 (Tex. Crim. App. 1991). When the appeal presents no actual controversy, the appeal is dismissed as moot. *See Fouke v. State*, 529 S.W.2d 772, 773 (Tex. Crim. App. 1975) (dismissing appeal as moot because defendant voluntarily paid fine and costs complained of in appeal); *Laney v. State*, 223 S.W.3d 656, 659 (Tex. App.—Tyler 2007, no pet.) (stating generally that appeals presenting no actual controversy are dismissed as moot). The drug-free-zone issue was not submitted to the jury, the jury made no findings that the offenses took place in a drug-free zone, and Garcia's sentences were not enhanced by findings that the offenses occurred in a drug-free zone.[12] Therefore, we conclude there is no live controversy with respect to this issue and the appeal of this issue is moot. We overrule Garcia's fourth issue.

---

[12] A finding that the offense occurred in a drug-free zone does not create a separate offense; it is a punishment enhancement. HEALTH & SAFETY § 481.134(c).

## C. *Testimony Regarding Firearm*

In his fifth issue, Garcia urges that the trial court erred in overruling his speculation objection and allowing Detective Schiller to testify that he believed the firearm found in apartment 107 was used to facilitate the offense of possession with intent to deliver. The record reveals several problems with Garcia's appellate argument. First, his issue on appeal does not comport with his objection to the trial court. *See Hallmark v. State*, 541 S.W.3d 167, 171 (Tex. Crim. App. 2017); *Bleimeyer v. State*, 616 S.W.3d 234, 250 (Tex. App.—Houston [14th Dist.] 2021, no pet.) ("[t]he appellant must have conveyed to the trial court the particular complaint raised on appeal, including the precise and proper application of law as well as the underlying rationale."). Although his objection at trial was "speculation," Garcia now argues this testimony was not relevant. He also argues that Detective Schiller was not qualified to give such an opinion. These objections were not made to the trial court and thus, are not preserved for appeal. *See* TEX. R. APP. P. 33.1(a)(1).

Second, his trial objection was untimely. A timely and specific objection is required to preserve error for appeal. *Id*. Defense counsel objected after the question was asked and the witness answered. *See Luna v. State*, 268 S.W.3d 594, 604 (Tex. Crim. App. 2008) ("If a defendant fails to object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely, and any claim of error is forfeited."). Garcia gives no reason for his delayed objection.

Third, the issue is moot. Although the deadly weapon allegation was submitted to the jury as a special issue in the jury charges, the jury answered "no" to the deadly weapon allegations. Thus, this Court's resolution of Garcia's issue would make no difference in the outcome of these appeals. *See Nayeb*, 2016 WL 165686, at *4. We overrule Garcia's fifth issue.

### D. Testimony Regarding Gunfire

Sixth, Garcia contends the trial court erred in overruling his relevance objection when the State asked Detective Schiller why he expected gunfire as he stood outside the open door of apartment 107. On redirect, the State asked Detective Schiller why SWAT officers were sent into apartment 107 before the search warrant had been issued, as follows:

State: Why do you make sure that SWAT goes in to secure the area before you go in?

Schiller: SWAT had the gear that would stop - - would help protect them from any, you know, possible gunfire.

State: Why did you expect gunfire in that area?

Schiller: I've actually been shot through the front door of a location while executing a search warrant.

Defense Counsel: I object to relevance.

Garcia argues that this testimony was irrelevant personal testimony about the conduct of another unrelated person shooting the officer. In response, the State asserts that defense counsel's cross-examination of Detective Schiller suggested the

detective had some improper motive in sending SWAT into the apartment prior to the issuance of the warrant. The State argues that this testimony was offered in response and was relevant to explain one of Detective Schiller's reasons for sending SWAT into the apartment. After the trial court overruled the objection, Detective Schiller continued his testimony about the increased risk of being shot while in the doorway or hallway in front of someone's home.[13]

Garcia asks that we consider the trial court's ruling on another untimely trial objection for which he shows no legitimate reason to justify the delay. Defense counsel objected after the question was asked and the witness answered. *See Luna*, 268 S.W.3d at 604.

Even if Garcia's objection had been timely, the trial court did not abuse its discretion in overruling the relevance objection. Relevant evidence is generally admissible, irrelevant evidence is not. TEX. R. EVID. 402. "Relevant evidence is evidence which has any tendency to make the existence of any fact of consequence more or less probable than it would be without the evidence." *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018); *see* TEX. R. EVID. 401. If the probative value of relevant evidence is substantially outweighed by a danger of unfair prejudice, the evidence is inadmissible under Rule 403. TEX. R. EVID. 403; *see Montgomery*, 810 S.W.2d at 387. In overruling Garcia's objection, the trial court

---

[13] He explained that as an undercover officer making drug purchases from a trap house, you have to be invited inside or you might face gunfire. The dealer might think you are trying to rob him of his product.

could have considered Detective Schiller's response to be relevant testimony as to the precautions police officers take before entering a residence. We conclude the trial court did not abuse its discretion in overruling Garcia's objection. We overrule Garcia's sixth issue.

### E. Expert Testimony Based on Hypothetical Facts

Garcia's seventh issue challenges the expert testimony of Irving Police Department Detective Timothy Hilton, the State's narcotics expert. Expert testimony is governed by Texas Rule of Evidence 702, which provides, "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702. Whether expert testimony will assist the trier of fact is a threshold issue for the trial court to determine. *See Morales v. State*, 32 S.W.3d 862, 865 (Tex. Crim. App. 2000); *Brantley v. State*, 606 S.W.3d 328, 336 (Tex. App.—Houston [1st Dist.] 2020, no pet.).

Garcia complains that the facts in a hypothetical posed to Hilton were not sufficiently similar to the facts in this case and thus, are not applicable to him. Garcia also complains that the State's hypothetical did not include sufficient facts to reach an ultimate opinion of guilt. Neither of these objections were made to the trial court and are not preserved for appeal. TEX. R. APP. 33.1(a).

Finally, Garcia urges that the hypothetical invaded the province of the jury to determine guilt. "The doctrine which prohibited testimony that would invade the province of the jury 'is and has been long dead' as a proposition of law." *Mays v. State*, 563 S.W.2d 260, 263 (Tex. Crim. App. 1978) (quoting *Boyde v. State*, 513 S.W.2d 588, 590 (Tex. Crim. App. 1974)); *see Hopkins v. State*, 480 S.W.2d 212, 218 (Tex. Crim. App. 1972) (repudiating the "invasion of the province of the jury" rule). Because Texas Rule of Evidence 704 permits the admission of an opinion on an ultimate issue, an objection that testimony "invades the province of the jury" is no longer a valid objection to opinion testimony. *See Hurst v. State*, 406 S.W.3d 617, 621–22 (Tex. App.—Eastland 2013, no pet.) (citing *Ortiz v. State*, 834 S.W.2d 343, 348 (Tex. Crim. App. 1992)). Many courts have concluded that the "province of the jury" objection is too imprecise to preserve error. *See id.* Thus, we consider whether Garcia's objection was sufficiently specific to make the trial court aware of the complaint. *See* TEX. R. APP. P. 33.1(a)(1)(A).

Detective Hilton testified for the State as its expert on the drug trade. The State presented a hypothetical set of facts about evidence found in an apartment, including an assault rifle concealed behind a sofa, documents, envelopes with a person's name on them, cell phones, a variety of suspected drugs, and a plate with a straw cut into a point. In the hypothetical, one of the cell phones contained text messages directing people to the apartment that was searched. Also in the hypothetical, the text messages, the finger prints in the apartment, and the mail all pointed to the same

person. The State asked Hilton a series of questions about what such evidence might indicate with respect to the drug trade. The State then asked, "Going back to the hypothetical, would the person in - - named in all the - - in all the documents and fingerprints, would that person be guilty of possession with intent to deliver?" Defense counsel objected: "Judge, I object to invading the province of the jury." The trial court overruled the objection. Although not entirely clear, the complaint at trial appears to have been that the State's question sought an opinion that embraced the ultimate issue of Garcia's guilt.

On appeal, Garcia argues that the expert's opinion invaded the province of the jury because it was not helpful to the jury as required by Rule 702. *See* TEX. R. EVID. 702 (expert may testify in the form of an opinion to help trier of fact understand evidence or determine a fact issue). He also urges the expert's opinion was contrary to Rule 704. *See* TEX. R. EVID. 704 ("An opinion is not objectionable just because it embraces an ultimate issue."). These arguments do not comport with the objection Garcia made below. *See Hallmark*, 541 S.W.3d at 171; *Bleimeyer*, 616 S.W.3d at 250.

Even if Garcia had preserved his argument for appeal, the trial court did not abuse its discretion in allowing Detective Hilton to opine on the hypothetical fact scenario present to him. An expert may offer an opinion based solely on hypothetical questions presented at trial. *Tillman v. State*, 354 S.W.3d 425, 439 (Tex. Crim. App. 2011) (citing *Jordan v. State*, 928 S.W.2d 550, 556 n.8 (Tex. Crim. App. 1996)

(evidence rule 703 permits opinion testimony on data and facts made known to expert during trial)). To be admissible, the expert testimony must be sufficiently reliable and relevant to help the jury in reaching accurate results. *Id*. at 435. Here, the record shows that the hypothetical facts presented to Detective Hilton mirrored the facts in Garcia's cases, thus making Detective Hilton's opinions applicable to the relevant facts. *Id*. at 441.

In addition to being sufficiently tied to the facts of the cases, Detective Hilton's testimony assisted the trier of fact. "[A] trial court need not exclude expert testimony when the general subject matter is within the comprehension of the average juror, as long as the witness has some specialized knowledge on the topic that will 'assist' the jury." *Coble v. State*, 330 S.W.3d 253, 288 (Tex. Crim. App. 2010). Detective Hilton's background and experience as a narcotics detective provided insight and information to the jury about nuances unique to the drug trade. His testimony helped the jury to determine whether there was sufficient evidence of possession with intent to deliver. *See Morales*, 32 S.W.3d at 865.

Alternatively, Garcia contends that the hypothetical erroneously required that the expert opine as to the truthfulness of the alleged facts given by a prior State's witness; however, he fails to identify the witness to whom he refers and he also fails to provide citation to the record to support this contention. Garcia fails to provide a clear and concise argument for this contention, with appropriate citation to

authorities and the record. TEX. R. APP. P. 38.1(i). Further, this objection was not made to the trial court and is not preserved for appeal. TEX. R. APP. 33.1(a).

The trial court did not abuse its discretion in overruling Garcia's objection that Hilton's expert opinion invaded the province of the jury. *Tillman*, 354 S.W.3d at 439. We overrule Garcia's seventh issue.

**Jury Charge Error**

In his eighth issue, Garcia contends the trial court erred in denying his request for an article 38.23 jury instruction regarding the legality of the police search of apartment 107. In reviewing jury-charge error, we first determine whether error exists. *See Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If we find error, we must then determine whether the error caused sufficient harm to require reversal. *Ngo*, 175 S.W.3d at 743. The standard of review differs depending on whether the defendant made a timely objection at trial. *See Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020). If the error was the subject of a timely objection, reversal is required if there is some harm to the defendant as a result of the error. *See* TEX. CODE CRIM. PROC. ANN. art. 36.19; *Gonzalez v. State*, 610 S.W.3d 22, 27 (Tex. Crim. App. 2020). If no proper objection was made at trial, reversal is required only if the error is so egregious that the defendant was denied a fair and impartial trial. *Chambers v. State*, 580 S.W.3d 149, 154 (Tex. Crim. App. 2019). Here, Garcia

objected to the trial court's failure to include his article 38.23 jury instruction regarding the legality of the police search. Thus, if we find that the jury charge was erroneous, we will consider the effect of the error under the standard of some harm. *See Gonzalez*, 610 S.W.3d at 27.

"Article 38.23 contemplates that a crime has already been committed; that evidence of that crime exists; and that officers violate the law in attempting to obtain evidence of the previously committed crime." *Day v. State*, 614 S.W.3d 121, 128–29 (Tex. Crim. App. 2020). Article 38.23 provides that no evidence obtained by an officer or other person in violation of the laws or constitutions of Texas or the United States shall be admitted in evidence against the accused on the trial of any criminal case. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a); *see also Pickens v. State*, 165 S.W.3d 675, 680 (Tex. Crim. App. 2005). It also provides that, where the legal evidence raises such an issue, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained by such a violation, then it shall disregard any such evidence. *See* CRIM. PROC. art. 38.23(a). "To be entitled to a jury instruction under article 38.23(a), the defendant must show that (1) an issue of historical fact was raised in front of the jury; (2) the fact was contested by affirmative evidence at trial; and (3) the contested fact is material to the constitutional or statutory violation that the defendant has identified as rendering the particular evidence inadmissible." *Kinnett v. State*, 623 S.W.3d 876, 917 (Tex. App.—Houston

[1st Dist.] 2020, no pet.) (citing *Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012)).

Garcia argues that his trial counsel put on significant evidence in support of the disputed, material issue of fact that he had "standing to challenge the warrantless search of the apartment." He requested an article 38.23 instruction and presented the trial court with a proposed instruction that set forth law on warrantless searches and seizures. However, notwithstanding Garcia's repeated references to the "warrantless search," the evidence established that the police obtained a warrant to search apartment 107 before the search took place.

Article 38.23(a)'s exclusionary rule does not apply when the challenged "evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause." CRIM. PROC. art. 38.23(b); *see McClintock v. State*, 541 S.W.3d 63, 72–73 (Tex. Crim. App. 2017). "An officer who reasonably believes that the information he submitted in a probable cause affidavit was legally obtained has no reason to believe the resulting warrant was tainted." *McClintock*, 541 S.W.3d at 72–73. "In executing the warrant, that officer 'act[s] in objective good faith reliance upon' the warrant, as long as the warrant is facially valid." *Id*. at 73.

Here, Detective Schiller testified that he prepared a search warrant application for apartment 107.[14] He further testified that once the search warrant issued, he and his partner entered apartment 107 to conduct the search. There is no evidence disputing Detective Schiller's testimony that the search of apartment 107 was conducted pursuant to a warrant. "If there is no disputed factual issue, the legality of the conduct is determined by the trial judge alone, as a question of law." *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007).

We therefore conclude that Garcia was not entitled to a jury instruction under article 38.23(a) because the officers' search of the apartment was executed "in objective good faith reliance" on the warrant. *See* CRIM. PROC. art. 38.23(b). The trial court did not err by refusing to give Garcia's requested instruction. We overrule Garcia's eighth issue.

## Judgment Modification

In a cross-point, the State requests that the trial court's judgment be modified to correct several clerical errors. Appellate courts may modify a trial court's judgment and affirm it as modified. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). This Court "has the power to correct and reform the judgment of the court below to make the record speak the truth when it has the necessary data and information to do so." *Asberry v. State*, 813 S.W.2d 526,

---

[14] The search warrant affidavit, the search warrant, and the return were admitted for record purposes as State's Exhibit 1. Garcia does not assert that the warrant affidavit failed to establish probable cause.

529 (Tex. App.—Dallas 1991, writ ref'd). Appellate courts may reform trial court judgments where "the evidence necessary to correct the judgment appears in the record." *Id*. If a clerical error in the trial court's judgment is brought to our attention, we have a "mandatory duty" to correct it. *Id*.

Garcia was convicted of two offenses: (1) possession with intent to deliver over four grams but less than 200 grams of methamphetamine (Cause No. 05-19-01136-CR) and (2) possession with intent to deliver over four grams but less than 200 grams of cocaine (Cause No. 05-19-01161-CR). He subsequently entered a plea of "not true" to the enhancement paragraph in each case. The written judgments, however, show that he was convicted of manufacturing with intent to deliver methamphetamine and cocaine. The judgments also indicate that Garcia pleaded true to the enhancement paragraph in each case.

Based on the record before us, we modify the judgment in Cause No. 05-19-01136-CR to reflect that Garcia was convicted of possession with intent to deliver methamphetamine in an amount of four grams or more but less than 200 grams, and that he pleaded "not true" to the enhancement paragraph. We modify the judgment in Cause No. 05-19-01161-CR to reflect that Garcia was convicted of possession with intent to deliver cocaine in an amount of four grams or more but less than 200 grams, and that he pleaded "not true" to the enhancement paragraph.

## Conclusion

We modify the judgments and affirm the trial court's judgments as modified.

/Bill Pedersen, III//

BILL PEDERSEN, III
JUSTICE

191136f.u05
191161f.u05
Do Not Publish
TEX. R. APP. P. 47



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

MARGARITO MARTIN GARCIA,
Appellant

No. 05-19-01136-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F-1871156-N.
Opinion delivered by Justice
Pedersen, III. Justices Partida-
Kipness and Goldstein participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**MODIFIED** as follows:

Appellant was convicted of possession with intent to deliver
methamphetamine in an amount of four grams or more but less than
200 grams, and he pleaded "not true" to the enhancement paragraph.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 17th day of August, 2021.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MARGARITO MARTIN GARCIA,
Appellant

No. 05-19-01161-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F-1871157-N.
Opinion delivered by Justice
Pedersen, III. Justices Partida-
Kipness and Goldstein participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

Appellant was convicted of possession with intent to deliver cocaine
in an amount of four grams or more but less than 200 grams, and he
pleaded "not true" to the enhancement paragraph.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 17th day of August, 2021.